UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

WILLIAM ASHLEY,

                     Petitioner,          05 Civ. 4497 (JGK)

      - against -          OPINION AND ORDER

JOHN BURGE, SUPERINTENDENT, AUBURN
CORRECTIONAL FACILITY,

                     Respondent.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

New York State prisoner William Ashley ("the petitioner") brings this pro se petition for habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner's first trial in New York State Supreme Court, Bronx County, resulted in a hung jury. On March 21, 2002, after a second jury trial, a judgment of conviction was entered convicting the petitioner on one count of murder in the second degree and one count of criminal possession of a weapon in the second degree, for which he was sentenced to concurrent prison terms of 25 years to life and 15 years. The petitioner challenges his conviction on two grounds. First, the petitioner alleges that the trial court violated his privilege against self-incrimination and his due process rights when it improperly permitted the prosecution to introduce his abandoned alibi notice into evidence, discrediting the testimony of a defense witness who unexpectedly created an inconsistent alibi

1

for the petitioner during cross-examination.  Second, the petitioner alleges that the trial court's rulings regarding the summation arguments and the jury charge violated his due process right to a fair trial by implying that the jury may not draw inferences favorable to the petitioner from the fact that the prosecution called only one of several eyewitnesses to testify. For the reasons that follow, the petition for habeas corpus is **denied**.

**I.**

**A.**

The evidence at trial established that Anthony Mario Chiles was shot and killed in the street in front of 1466 College Avenue, in Bronx County, New York on the evening of June 27, 1999.  At trial, the prosecution presented an eyewitness, Ronnical Green ("Green"), who operated a home for recovering drug addicts at 1468 College Avenue next door to 1466 College Avenue, where the petitioner's mother lived and where Mr. Green had seen the petitioner "all the time."  (Trial Tr. ("Tr.") 77.) Green testified that although he generally had a friendly relationship with the residents of 1466 College Avenue, he and the petitioner argued on the morning of June 27.  (Tr. 66-67, 146-48.)

2

Green testified that he returned to 1468 College Avenue later that evening, and stood on the sidewalk in front of his home talking with two people who knew the petitioner. (Tr. 99–105.) He stated that the petitioner "paced" in the street nearby and then approached, firing a series of shots from a small silver gun in the direction where Green was standing with his friend Chiles. (Tr. 103, 108–123.) Green testified that he fell behind a car and was himself unharmed, but that his friend Chiles fell to the ground in the street and screamed, "He shot me in my heart!" (Tr. 113–116.) The victim's wife, Shyrlene Chiles, and son were also standing in the street at the time of the shooting and took the victim to the hospital. (Tr. 110, 126.) Green testified that he later talked to the police, said that he had "seen the incident," and described the shooter. (Tr. 169–74.)

In addition to other evidence, the prosecution presented flight evidence in order to show the petitioner's consciousness of guilt. Melissa Hukill ("Corporal Hukill"), a corporal with the Delaware State Police, testified that on July 8, 1999 she pulled over a car driven by the petitioner in connection with a traffic violation. (Tr. 370–72.) The petitioner jumped out of the car and ran across the street but was apprehended and taken to the police station where he gave a false name. (Tr. 374–75.) The petitioner did not appear in court on the day of his traffic

hearing.  (Tr. 385.)  Detective D'Amico, the police officer investigating the shooting, testified that although he returned to 1466 College Avenue numerous times for several months and went to Delaware to attempt to find the petitioner, he was unable to find the petitioner at any of these locations.  (Tr. 444-46, 453-55.)

The defense called Samiyyah Abdul Muhaymin ("Muhaymin") as a witness for the defense for "the very narrow purpose" of raising doubts regarding the prosecution's flight evidence. (Tr. 685.)  Muhaymin testified that she and the petitioner were moving to Delaware and often took trips to that state to visit friends and family, including a trip during the summer.  (Tr. 638-43.)  On cross-examination Muhaymin testified that although the petitioner was not with her at the time of the shooting, he had left her home "seconds" before, "to buy Pampers."  (Tr. 659-60.)

The prosecutor then requested the trial court's permission to introduce the petitioner's alibi notice as an informal judicial admission of a statement by the defendant inconsistent with his position at trial.  (Tr. 678-79.)  The notice stated that the petitioner had been "with his girlfriend . . . Tanesha Wilkerson," not Muhaymin, immediately before the shooting.[1]  (Tr.

---

[1]  The alibi notice stated, "Sir, please take notice that pursuant to C.P.L. §250.20, the defendant Edward Gary hereby gives alibi notice that at the time and place of the occurrence for which the defendant stands indicted,

690.)  The notice had been served on March 17, 2001, prior to the petitioner's first trial, by an attorney who no longer represented the petitioner.  (Tr. 690; Br. for Def.-Appellant 19, attached to Pet. for Writ of Habeas Corpus.)

Defense counsel objected to the introduction of the alibi notice.  He stated that there seemed to be a division among the state courts regarding the use of an alibi notice as evidence against a defendant.  He argued that the petitioner had chosen not to present to the jury that he had been with his girlfriend immediately preceding the shooting, and that Muhaymin's testimony had never been the petitioner's intended position; rather, it had been elicited by the prosecutor on cross-examination.  (Tr. 698-700.)  Thus, he appealed to the court for a "less severe ruling" and requested that "since we never put forth the alibi . . . the Court [] instruct the jury simply disregard it, even some language that—to suggest that it wasn't the defendant's position that he had just left her . . . ." (Tr. 707.).

The trial court denied defense counsel's request because it found that Muhyamin's testimony was to be regarded as the

---

immediately preceding he was with his girlfriend at 1382 College Avenue, Bronx, New York." (Tr. 690.)  Underneath the last line was the name "Miss Tanesha Wilkerson."  (Id.)  Although the body of the notice referred to "the defendant 'Edward Gary,'" the caption of the notice contained the petitioner's name and indictment number.  The prosecutor avowed that she had spoken with the petitioner's previous attorney and learned from him that the alibi notice did in fact refer to the petitioner, and that the name "Edward Gary" was an error.  (Id.)

defendant's position regardless of whether it was elicited by
the defense attorney or the prosecutor, and that it was "very
significant testimony in the defendant's favor" that "should
not . . . be simply left unchallenged."  (Tr. 703, 705.)  The
court's ruling on the alibi notice became final when defense
counsel was asked if he needed "time to look into it" to which
he answered, "No, I mean I have made my arguments." (Tr. 721.)

     Defense counsel mentioned the alibi notice in his closing
argument—he stated that it was not the petitioner's position
that he had been with Muhaymin seconds before the shooting and
that it was possible she had lied to help him.  (Tr. 811.)  The
prosecutor also discussed the petitioner's alibi notice during
her summation, mentioning it twice briefly (Tr. 869-70; 870-73)
in her sixty page closing statement.  She stated that Muhaymin's
testimony regarding when the petitioner left the Bronx to go to
Delaware was not credible because the jury "kn[ew] she lied to
help him."  (Tr. 870.)  The court instructed the jury that they
should "decide[] what weight to give this exhibit, just as you
do with all evidence in the case," and that the alibi notice did
not "place any burden on the defense to call any particular
witness or witnesses at this trial."  (Tr. 896-97.)

     During his summation, defense counsel also attempted to
argue that the victim's wife and son, whom the prosecution did
not call to testify, would have given a version of events

different from that of the prosecutor's eyewitness.  (Tr. 783–84.)

The court sustained the prosecutor's objections to these arguments, stating that they called for "speculation," and instructed defense counsel that the "[m]ost you can say is that they didn't testify at this trial . . . but you can't ask the jury to go beyond that." (Tr. 783; see also Tr. 813.)  The court instructed the jury to "disregard [those] comment[s] of counsel." (Tr. 784.)

During her closing argument, the prosecutor argued that Green's testimony was reliable.  The court sustained defense counsel's objections to the prosecutor's statements that when Green testified "[the petitioner's] side of the courtroom" was "packed" and that Green was "obviously scared" to testify in front of "everybody in this courtroom."  (Tr. 838A.)[2] Defense counsel also objected to the prosecutor's statements that Green was "consistent" (Tr: 824, 845) and that he had "talked to police," had "talked to assistant district attorneys," had "testified in front of the Grand Jury," had "testified at a prior proceeding," and had "testified here at trial" (Tr. 824), and that the "only difference in his testimony is, as defense has pointed out to you, are little nitpicking details." (Tr.

---

[2]  The court overruled, however, an objection to the prosecutor's subsequent statement that Green testified "[i]n front of all these people and [made] this accusation" on the grounds that the prosecutor had "rephrased" the objectionable part of her previous statement.  (Tr. 838A.)

824-25.)   The trial court overruled defense counsel's general objections to the prosecutor's statements.   (Tr. at 824, 845.)[3]

The court instructed the jury that the petitioner was to be presumed innocent and that "the law requires the People to establish the defendant's guilt beyond a reasonable doubt." (Tr. 904-05.)   The court then gave the following charge.

> I also instruct you that to meet their burden of proof under the law, the People are not required to have investigated the case in any particular manner or to have presented at trial any particular kind of evidence or any particular witness or witnesses. There are no numerical witness requirements under the law.
>
> Therefore, the absence from this trial of any particular individual or any particular kind of evidence, if you so find it absent, is not significant, if you are convinced from all the evidence that was presented, that the People have proven the defendant's guilt of the crime or crimes charged beyond a reasonable doubt.
>
> People, therefore, under our rules of law, may endeavor to prove their case as they see fit. Subject of course, to your ultimate assessment of the sufficiency or insufficiency of the evidence, but free of speculation or conjecture on the part of the jury as to what the evidence or testimony at trial might have been or could have been or should have been.

(Tr. at 907-08.)

Defense counsel objected to this section of the charge because it "seemed to deal directly with my summation wherein I . . . made reference to the People's failure to call witnesses." (Tr. 948.)   Defense counsel stated that it was permissible for

---

[3]   The defense counsel's only stated reason was misplaced—"Allegation of a prior inconsistent statement." (Tr. 824.)   The court overruled this objection, stating, "That wasn't the allegation as I heard it." (Id.)

the jury to consider "the People's failure to call witnesses who
were present on the scene" if they considered "the lack of such
evidence to be relevant or material" and requested a curative
instruction.  (Tr. 948.)  The court denied his request, stating
that the jury had been "sufficiently charged . . . on
insufficiency of evidence and that they may consider that."
(Tr. 949.)

**B.**

The petitioner appealed to the Appellate Division, First
Department, and argued the same claims advanced in the present
petition.  In an opinion dated June 17, 2004 the Appellate
Division unanimously rejected all of the petitioner's claims.
People v. Ashley, 778 N.Y.S.2d 274, 275 (App. Div. 2004).  While
the court found the use of the alibi notice to be contrary to
state law, the court found the error to be harmless in view of
the overwhelming evidence of the petitioner's guilt.  The court
noted that "[t]o the extent that defendant is raising a
constitutional claim, such claim is unpreserved, and we decline
to review it in the interest of justice."  Id. (citation
omitted).  The court also stated that "[i]n any event, any error
in the use of the alibi notice was harmless even under the
constitutional standard."  Id.

Regarding the jury charges and closing arguments, the Appellate Division rejected the petitioner's claims in totality. The court found that the trial court's limitations on defense counsel's summation were proper, and properly precluded unwarranted speculation.  Id.  Then the court declined to review the petitioner's "remaining contentions," finding them "unpreserved" and stating that "[w]ere we to review these claims, we would reject them."  Id.  On August 12, 2004, the petitioner's leave to appeal to the New York Court of Appeals was denied, People v. Ashley, 817 N.E.2d 826 (N.Y. 2004), and as a result, the Appellate Division was the last court to issue a reasoned decision in the petitioner's case.  By petition dated March 23, 2005, the petitioner raises the same constitutional claims rejected by the Appellate Division.

## II.

### A.

The petitioner contends that the trial court improperly permitted the prosecutor to use his alibi notice as evidence against him because it was an administrative document filed pursuant to a state requirement and later withdrawn or abandoned and thus its presentation to the jury effectively forced him to become a witness against himself, violating his privilege

10

against self-incrimination and depriving him of his due process right to a fair trial.  (Br. for Def.-Appellant 40-46.)

The Appellate Division found the petitioner's claim "unpreserved," implicitly relying on New York's preservation policy codified in New York Criminal Procedure Law ("NYCPL") § 470.05(2).  This statute grants an appellate court the discretion to decline to review claims if they were not preserved by being sufficiently presented to or decided by the trial court.[4]

Here, the petitioner's constitutional claim regarding the use of his alibi notice is procedurally defaulted because the Appellate Division's rejection of his claim on appeal pursuant to NYCPL § 470.05 is an independent and adequate state law ground prohibiting collateral review.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v.

---

[4]  Specifically, the statute provides in relevant part that "[f]or the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."  NYCPL § 470.05(2).

Thompson, 501 U.S. 722, 750 (1991); see also Lee v. Kemna, 534
U.S. 362, 375 (2002); Cotto v. Herbert, 331 F.3d 217, 238 (2d
Cir. 2003).

In this case, the Appellate Division explicitly relied on
an independent state procedural ground in rejecting the
petitioner's claim pursuant to New York's preservation policy.[5]
Therefore, "the dispute is over whether the asserted bar is
'adequate' to preclude federal habeas review." Cotto, 331 F.3d
at 239.  The question of adequacy is a question of federal law.
See Lee, 534 U.S. at 375.  In determining whether a state
procedural default is adequate to bar habeas review, this Court
must decide "whether application of the procedural rule is
'firmly established and regularly followed' in the specific
circumstances presented in the case, an inquiry that includes an
evaluation of the asserted state interest in applying the
procedural rule in such circumstances." Cotto, 331 F.3d at 240
(citing Lee, 534 U.S. at 386-87).  The Supreme Court has
cautioned that "[t]here are . . . exceptional cases in which
exorbitant application of a generally sound rule renders the
state ground inadequate to stop consideration of a federal

---

[5]  The procedural default is based on an independent state ground despite the
Appellate Division's alternative ruling on the merits that "[i]n any event,
any error in the use of the alibi notice was harmless even under the
constitutional standard." See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)
(stating that "a state court need not fear reaching the merits of a federal
claim in an alternative holding" because the independent and adequate state
ground doctrine "curtails reconsideration of the federal issue on federal
habeas as long as the state court explicitly invokes a state procedural bar
rule as a separate basis for decision") (emphasis in the original).

question." <u>Lee</u>, 534 U.S. at 376.  Nevertheless, "principles of

comity . . . counsel that a federal court that deems a state

procedural rule inadequate should not reach that conclusion

'lightly or without clear support in state law.'"  <u>Garcia v.</u>

<u>Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted).

In this case, the petitioner objected to the introduction

of the alibi notice, but did not do so on constitutional

grounds.  In <u>Cotto</u>, the Court of Appeals for the Second Circuit

identified three "guideposts in 'evaluat[ing] the state interest

in a procedural rule against the circumstances of a particular

case.'"  <u>Cotto</u>, 331 F.3d at 240 (alteration in original) (citing

<u>Lee</u>, 534 U.S. at 381–85):

> (1) whether the alleged procedural violation was
> actually relied on in the trial court, and whether
> perfect compliance with the state rule would have
> changed the trial court's decision; (2) whether state
> caselaw indicated that compliance with the rule was
> demanded in the specific circumstances presented; and
> (3) whether petitioner had substantially complied with
> the rule given the realities of trial, and, therefore,
> whether demanding perfect compliance with the rule
> would serve a legitimate governmental interest.

<u>Id.</u> (internal quotation marks omitted).  The <u>Cotto</u> court

also explained that the first guidepost is less relevant in

cases where the procedural default is based on a failure to

preserve a claim by sufficient protest at trial because

"the likely impact of a contemporaneous objection involves

a certain degree of speculation."  <u>Id.</u> at 242–43.

The second consideration weighs heavily against the petitioner because compliance with the preservation policy is regularly demanded by New York courts in similar circumstances.  As interpreted by the New York Court of Appeals, New York's preservation policy promotes the finality of criminal litigation by ensuring that only those questions of law raised and considered with specificity by the trial court are preserved for appeal.  See, e.g., People v. Robinson, 671 N.E.2d 1266, 1267 (N.Y. 1996) (mem.) ("[T]o frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error."); People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995) ("[T]he preservation requirement compels that the argument be 'specifically directed' at the alleged error . . . .") (quoting People v. Cona, 399 N.E.2d 1167, 1169 n.2 (N.Y. 1979)); see also Harvey v. Mazzuca, 04 Civ. 8019, 2006 WL 1529325, at *2 (S.D.N.Y. June 5, 2006) (noting that the state court found the habeas petitioner's constitutional claims regarding the use of his alibi notice unpreserved because his only trial objection was that the notice was not inconsistent with his position at trial) (citing People v. Harvey, 766 N.Y.S.2d 194, 195 (App. Div.

14

2003)); People v. Waters, 682 N.E.2d 980, 981 (N.Y. 1997)

(mem.) (Fifth Amendment claim unpreserved where defense

counsel objected to testimony regarding the appellant's

pre-trial silence on hearsay grounds alone and did not

raise constitutional theory for his objection until

appeal); People v. Luperon, 647 N.E.2d 1243, 1245-47 (N.Y.

1995) (finding an issue unpreserved because the legal

grounds presented to the trial court in favor of a

requested ruling differed from the legal grounds raised on

appeal regarding the same ruling); People v. Fronjian, 802

N.Y.S.2d 33, 34 (App. Div. 2005) (constitutional claim

unpreserved where appellant's attempt to introduce evidence

was rejected by the trial court on state law evidentiary

grounds and appellant did not assert a constitutional right

to present the evidence to the jury), lv. denied, 844

N.E.2d 798 (N.Y. 2006).

The petitioner argues that New York courts do not

consistently require sufficient preservation of claims regarding

fundamental constitutional rights such as the privilege against

self-incrimination.  (See Pet'r's Aff. in Opp'n to Resp't's Aff.

& Mem. of Law ¶ 3.)  In support of his contention, the

petitioner cites People v. McLucas, 204 N.E.2d 846, 848 (N.Y.

1965).  In that case, the New York Court of Appeals stated,

"[The] [d]efendant insists . . . that no exception is necessary

to preserve for appellate review a deprivation of a fundamental constitutional right.  This is correct under our decisions." Id.  The Court of Appeals held "that the Trial Judge's remarks . . . violated defendant's Federal and State constitutional rights as against self-incrimination . . . and that the absence of an exception is immaterial."  Id. (citation omitted).

However, this "fundamental constitutional right" exception set out in McLucas has been narrowly construed by New York courts.  In People v. Patterson, 347 N.E.2d 898, 903 (N.Y. 1976), aff'd, 432 U.S. 197 (1977), the New York Court of Appeals stated that the McLucas court gave "broad[] expression" to the "one very narrow exception to the requirement of a timely objection." Patterson, 347 N.E.2d at 902, 903.  The Patterson court then stated, "[a]s we view it today, the purpose of this narrow, historical exception is to ensure that criminal trials are conducted in accordance with the mode of procedure mandated by Constitution and statute," and that the exception exists "[w]here the procedure adopted by the court below is at a basic variance with the mandate of law" causing the entire trial to become "irreparably tainted."  Id. at 903; see also People v. Autry, 552 N.E.2d 156, 157 (N.Y. 1990) (mem.) (limiting McLucas to its specific facts); People v. Ahmed, 487 N.E.2d 894, 895 (N.Y. 1989) (collecting cases); People v. Udzinski, 541 N.Y.S.2d

9, 12-14 (App. Div.) (collecting cases and stating that "[w]hile
it is possible to derive from prior decisional law sweeping
statements such as 'no exception is necessary to preserve for
appellate review a deprivation of a fundamental constitutional
right' . . . it is now clear that such obiter dictum no longer
reflects sound law. . . . The preservation doctrine has been
applied so as to preclude appellate review of a wide variety of
arguments relating to errors which clearly affected fundamental
rights."), app. denied, 546 N.E.2d 201 (N.Y. 1989).  McLucas
would allow appellate review of a court's comment on a
defendant's failure to testify even without a contemporaneous
objection, but the comment must be sufficiently clear to convey
to the jury the constitutionally erroneous statement that the
defendant should have testified.  Autry, 552 N.E.2d at 157;
Pearson v. Greiner, 02 Civ. 10244, 2004 WL 2453929, at *11-*12
(S.D.N.Y. Nov. 3, 2004).

     The New York courts have applied the preservation rule to
bar claims that the defendant's privilege against compulsory
self-incrimination was impinged, where the claims did not
involve an improper judicial comment on a defendant's failure to
testify.  See, e.g., People v. Brown, 774 N.E.2d 186, 191 n.3
(N.Y. 2002) (declining to consider constitutional challenges
concerning impeachment of a defendant with a withdrawn alibi
notice where the defendant failed to preserve the arguments for

17

appellate review); Harvey, 2006 WL 1529325 at *2 ("[T]he
Appellate Division declined to review petitioner's claim that
his constitutional rights to due process and against self-
incrimination were violated by admission of the evidence [of the
defendant's alibi notice]. . . . The court found the claim
unpreserved . . . .") (citing Harvey, 766 N.Y.S.2d at 195); see
also, Waters, 682 N.E.2d at 981 (claim that admission of
testimony about defendant's silence upon contradiction of his
second alibi penalized him for exercising his constitutional
right was not preserved); People v. Tutt, 348 N.E.2d 920, 920-21
(N.Y. 1976) (mem.) (inadequacy of Miranda warnings not
preserved); People v. Colon, 595 N.Y.S.2d 15, 15 (App. Div.
1993) (mem.) ("Defendant's claim that his right against self-
incrimination was abridged [by questioning concerning
defendant's post-arrest silence] is not preserved by timely and
appropriate objection (CPL § 470.05[2]) . . . ."); People v.
Sampson, 549 N.Y.S.2d 699, 700 (App. Div. 1990) (mem.) (claim
that the defendant's Fifth Amendment right against self-
incrimination was violated by the prosecutor's suggestion that
the defendant had a duty to come forward when contacted by the
police was not preserved).

    In this case, the petitioner cannot claim that the "mode of
proceedings" adopted by the trial court was at "basic variance
with the mandate of law" such that the trial was "irreparably

tainted" because of the introduction of his alibi notice.   Thus the exception to the preservation requirement discussed in McLucas and narrowly construed by subsequent decisions does not apply to the petitioner's argument.   The New York cases point consistently to application of the preservation rule with respect to arguments similar to those raised by the petitioner. Accordingly, the second guidepost points against the petitioner.

Finally, the petitioner did not "substantially comply" with New York's preservation policy in a manner that served the rule's purpose.   Although defense counsel protested the introduction of the alibi notice, his objections were based on state law evidentiary grounds.   The petitioner thus never gave the trial court an opportunity to rule on whether the use of the alibi notice violated his constitutional rights, nor did the trial court rule on whether the introduction of the notice had constitutional implications.   Indeed, the trial court gave the petitioner's counsel the opportunity to consider the matter further overnight but his counsel declined the opportunity.   New York has an interest in the finality of criminal trials that was not served by the petitioner's trial objections.   Thus, the third guidepost also weighs against the petitioner because the claims raised on appeal were based on different legal grounds than those voiced at trial.

In sum, the Appellate Division rejected the petitioner's constitutional claim regarding the alibi notice according to New York's preservation rule in a manner that is "firmly established and regularly followed" in similar circumstances and in accordance with the legitimate state interest served by the rule.  Garcia, 188 F.3d at 77.  Accordingly, the petitioner's case is not one of the rare cases of exorbitant application of a state rule that would render the procedural bar inadequate.  The Appellate Division's rejection of the petitioner's claims is supported by an independent and adequate state law ground that bars this Court from reviewing the merits of the petitioner's constitutional claims relating to the use of the alibi notice.

Furthermore, the petitioner has shown neither (1) cause and prejudice nor (2) a "fundamental miscarriage of justice" to overcome the procedural default.  See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000) (citation omitted).  The petitioner has not shown cause because he has failed to show that some "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Thus, there is no cause for the petitioner's failure to object at trial to the use of the alibi notice on constitutional grounds.

The petitioner is also unable to show that introduction of the alibi notice worked to his actual prejudice.  To establish actual prejudice, a prisoner must show that the constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982); see also Murray, 477 U.S. at 494.

Despite the petitioner's contentions that the prosecutor's use of the alibi notice prejudiced him—by discrediting the entirety of Muhaymin's testimony and evidencing a false exculpatory statement (Br. for Def.-Appellant 53-54)—the alibi notice did not work to the petitioner's actual and substantial disadvantage.  The thrust of the prosecutor's use of the notice, in two fairly brief references in the summation, was to impeach Muhaymin, a witness called by the defense.  Muhaymin had been called for the limited purpose of rebutting the prosecution's evidence of flight to Delaware.  However, although Muhaymin's testimony explained the petitioner's presence in the state of Delaware, it undermined very little of the prosecution's basic flight evidence, namely that the petitioner left New York, fled from and lied to Delaware police when pulled over in a traffic stop, did not appear in court for his traffic hearing, and was unable to be found for several months at any of the locations he had previously been known to visit frequently.  Furthermore, the

21

flight evidence was only offered to demonstrate the petitioner's
consciousness of guilt.  This evidence was peripheral to the
eyewitness testimony and ballistics evidence.  Muhaymin's
testimony, because it did not in any way undermine the crucial
eyewitness or ballistics evidence, and because it only served to
counter part of the prosecution's flight evidence, did very
little to establish doubt that the petitioner was the person who
shot and killed the victim, even if it had not been impeached by
the introduction of the alibi notice.  The alibi notice thus did
not cause actual prejudice of constitutional dimensions because
it was questionable evidence directed at impeaching a witness
who was not a significant witness in the context of an otherwise
strong case against the petitioner.

    The second exception to the independent and adequate state
grounds doctrine provides no help to the petitioner because the
petitioner has not alleged that he is actually innocent.
Therefore his is not "an extraordinary case, where a
constitutional violation has probably resulted in the conviction
of one who is actually innocent" that would constitute a
"fundamental miscarriage of justice" and excuse his failure to
meet the requirements of New York's preservation policy.
Murray, 477 U.S. at 495-496.

    Accordingly, the petitioner's constitutional claims
regarding the alibi notice are denied because the Appellate

Division's rejection of them rests on an independent and
adequate state ground, and the exceptions to this doctrine do
not apply.

**B.**

The petitioner's second claim consists of allegations that
the trial court's charge to the jury and rulings on the scope of
the summations improperly limited his ability to invite the jury
to draw inferences favorable to him from the fact that the
prosecution called only one of several eyewitnesses to testify.
(Br. for Def.-Appellant 55-61.)  Specifically, the petitioner
claims that it was improper for the trial court to restrict
defense counsel from arguing on summation that the testimony of
certain eyewitnesses whom the prosecution did not call to
testify would have contradicted the prosecution's eyewitness
testimony.  (Id. at 55-58.)  In addition, he claims that the
court exacerbated this error because its charge to the jury
effectively instructed that no inferences at all could be drawn
from the fact that the People failed to call certain
eyewitnesses, thus diminishing the People's burden of proof.
(Id. at 58.)  Finally, he claims that it was improper for the
prosecutor to argue in summation that Green's statements prior
to trial were consistent with his trial testimony because this

23

argument both misstated the evidence and referred to facts not
in evidence.  (Id. at 59-60).

1.

The Appellate Division rejected the petitioner's claim that
the trial court violated his due process right to a fair trial
when it limited defense counsel's summation argument, stating
that "[t]he court . . . properly precluded counsel from inviting
unwarranted speculation." Ashley, 778 N.Y.S.2d at 275.

Pursuant to the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), a federal court may not grant habeas
corpus relief "with respect to any claim that was adjudicated on
the merits in State court proceedings" unless the state court's
decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States," 28 U.S.C. §
2254(d)(1), or was "based on an unreasonable determination of
the facts in light of the evidence presented," § 2254(d)(2).
The Appellate Division's decision finding the trial court's
rulings proper is accordingly entitled to deferential treatment
under AEDPA; this decision was an "adjudication on the merits"
of the petitioner's due process claim.  See Norde v. Keane, 294
F.3d 401, 409-10 (2d Cir. 2002) (noting that "AEDPA's more
stringent standard" governs federal habeas review when a state
court has adjudicated the merits of a petitioner's claim, and

24

explaining that such an adjudication occurs when the state court has "dispose[d] of the petitioner's federal claim on substantive grounds, and reduce[d] that disposition to judgment," even if the state court did not "articulat[e] . . . its rationale" or even "specifically mention the claim," as long as the court "use[d] general language referable to the merits.") (citing Aparicio v. Artuz, 269 F.3d 78, 93-94 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 312-314 (2d Cir. 2001)).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning."  Williams v. Taylor, 529 U.S. 362, 404-05 (2000).  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."  Id. at 412; see also Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2002) ("A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent.").  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).  "Clearly established federal law" refers only to Supreme Court "holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.

A state court's decision is "contrary to" Supreme Court precedent when the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 405-06; see also Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. An application of Supreme Court precedent must be "objectively unreasonable" in order to provide a basis for habeas reversal. Williams, 529 U.S. at 409, 412 (noting that "an unreasonable application of federal law is different from an incorrect or erroneous application of federal law"). For a state court decision to be found unreasonable, "[s]ome increment of incorrectness beyond error is required. . . . [H]owever, that increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCL

_Albion_, 171 F.3d 877, 889 (3d Cir. 1999) (en banc)).  Although the Appellate Division in this case denied the petitioner's claim without referring to relevant federal caselaw, the Second Circuit Court of Appeals has explained that "when a state court fails to articulate the rationale underlying its rejection of a petitioner's claim," this Court must "focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." _Sellan_, 261 F.3d at 311 (_citing_ _Bell v. Jarvis_, 236 F.3d 149 (4th Cir. 2000)).

In this case, the defense counsel invited the jury to draw inferences from trial testimony that eyewitnesses who did not testify at trial would have provided testimony contradictory to that of the prosecution's eyewitness.  The trial court stated that the defense counsel was permitted to argue "that [the eyewitnesses] didn't testify at this trial" but he was not to "call[] for speculation" or "ask the jury to go beyond that." (Tr. 783-84.)  The Appellate Division ruled that the trial court properly limited the defense counsel's summation and cited _People v. Greene_, 720 N.Y.S.2d 453 (App. Div. 2001), _lv. denied_ 750 N.E.2d 80 (N.Y. 2001).  In that case, the court held that it was within a trial court's discretion to allow an attorney to comment on the absence of a particular witness, but to preclude "unwarranted speculation" as to the testimony that witness might

have provided.  Id. at 454.  The petitioner has not pointed to
any Supreme Court precedent that required the trial court, as a
matter of constitutional law, to permit defense counsel to
invite speculation as to what absent witnesses would have
testified to, if called as witnesses.  There is therefore no
basis to conclude that the state court decision was either
"contrary to" or an "unreasonable application" of clearly
established Supreme Court precedent.

2.

The petitioner's claims regarding the prosecutor's
summation and the court's charge to the jury were the only
claims that the Appellate Division did not specifically address,
and thus those claims were covered by the Appellate Division's
statement that the petitioner's "remaining contentions are
unpreserved and we decline to review them in the interest of
justice.  Were we to review these claims, we would reject them."
Ashley, 778 N.Y.S.2d at 275.  The Appellate Division's first
statement reflects an explicit reliance on an independent state
procedural rule in rejecting the petitioner's claims, despite
the Appellate Division's alternative ruling on the merits.  See
Harris, 489 U.S. at 264 n.10.  As explained above, a procedural
default is an adequate bar if it is "firmly established and
regularly followed" by the state courts "in the specific

circumstances presented in the case." Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 386-87).

New York courts frequently find a general objection voiced during summations does not preserve more specific claims later brought before an appellate court. People v. Dien, 571 N.E.2d 69, 69-70 (N.Y. 1991) (mem.) (finding unpreserved the appellant's claim that the prosecutor's summation comment violated his rights to a fair trial and to equal protection under the law when the "defendant made only a general objection"); People v. Rivera, 537 N.E.2d 618, 618 (N.Y. 1989) (mem.) (same); People v. Park, 591 N.Y.S.2d 12, 12 (App. Div. 1992) (mem.) (same). The petitioner therefore did not substantially comply with the preservation rule because defense counsel made only general objections to the prosecutor's summation and never presented to the trial court, as he did on appeal, questions of whether these comments violated due process by misstating the evidence or referring to facts not in evidence. (Br. for Def.-Appellant 60.) Thus New York has an interest in promoting finality in criminal litigation by enforcing compliance with the preservation policy in these circumstances. The Appellate Division's rejection of this claim pursuant to New York's preservation requirement is an independent and adequate basis to support the Appellate Division's rejection of the petitioner's claim. See Reese v.

Greiner, 97 Civ. 5622, 2003 WL 21459577, at *5 (S.D.N.Y. June 23, 2003) (finding that a habeas petitioner's failure to preserve a claim that the prosecutor vouched for witnesses during summation and misstated facts was a procedural default constituting an independent and adequate state ground).

The petitioner has not attempted to show either (1) cause for the default and prejudice or (2) a "fundamental miscarriage of justice" which has resulted in the conviction of an innocent person.  See Spence, 219 F.3d at 170.  The petitioner's claims regarding the prosecutor's summation are thus procedurally defaulted and barred from review by this Court.

In any event, the petitioner's claim regarding the prosecutor's summation comment is not grounds for habeas relief. Affording AEDPA deference to the Appellate Division's rejection of the merits of the petitioner's claims, the Appellate Division ruling was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  See 28 U.S.C. § 2254(d)(1); see also Williams 529 U.S. at 404-05.  Prosecutorial misconduct amounting to a due process violation requires more than a showing that "the prosecutors' remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Darden v. Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983)).  The Supreme Court, in Donnelly v. DeChristoforo, 416 U.S. 637 (1974), stated that a prosecutor's

trial remarks that did not directly infringe on a constitutionally protected right, would not violate a defendant's right to due process unless they rendered the defendant's trial fundamentally unfair. Id. at 643-645; see also Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (stating a three-factor test in determining "substantial prejudice" from a prosecutor's summation, including the severity of the misconduct, measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements) (citing United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)); Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986) ("[C]onstitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair."). Here, the prosecutor's isolated comments on Green's consistency or courage in the midst of many other proper arguments that his testimony was credible did not render the petitioner's trial so fundamentally unfair as to deny him due process.

With respect to the petitioner's jury charge claim, defense counsel objected to the trial court's instruction that limited the jury's ability to speculate on the absence of testimony from other eyewitnesses by stating that he believed it was proper for the jury to consider the People's failure to call eyewitnesses in determining the sufficiency of the evidence. (Tr. 947-48.)

He also requested a curative instruction.  (Tr. 948.)  It is
arguable, therefore, that the petitioner substantially complied
with the preservation requirement and preserved for appeal his
claim that the trial court's instruction shifted the burden of
proof.

It is unnecessary to resolve whether this issue was
procedurally defaulted, however, because the petitioner's claims
have no merit.  See Dunham v. Travis, 313 F.3d 724, 729-730 (2d
Cir. 2002) ("[H]urdling the procedural questions to reach the
merits of a habeas petition is justified in rare situations,
'for example, if the [the underlying issue] were easily
resolvable against the habeas petitioner, whereas the
procedural-bar issue involved complicated issues of state
law.'") (alteration in original) (quoting Lambrix v. Singletary,
520 U.S. 518, 525 (1997)).

Here, the Appellate Division's alternative ruling rejecting
the jury charge claim on the merits was not an unreasonable
application of clearly established federal law.  The jury was
fully instructed that the petitioner was presumed innocent and
that the prosecution had the burden of proving the petitioner's
guilt beyond a reasonable doubt.  "[A] single instruction to a
jury may not be judged in artificial isolation, but must be
viewed in the context of the overall charge."  Cupp v. Naughten,
414 U.S. 141, 146-147 (1973).  In the context of the court's

32

lengthy instructions including the instructions that the
prosecution must prove every element of the crimes charged
beyond a reasonable doubt, and the caution to assess the
sufficiency or insufficiency of the evidence, the error, if any,
in the charge that limited the jury's ability to speculate on
the absence of testimony from other eyewitnesses did not "so
infect[] the entire trial that the resulting conviction violates
due process."  Id. at 147.  The Appellate Division's rejection
of the petitioner's jury charge claim was not an objectively
unreasonable application of clearly established federal law, and
thus this claim is also denied.

## CONCLUSION

For the reasons explained above, the petition for
habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**.  The Court
declines to issue a certificate of appealability pursuant to 28
U.S.C. § 2253 because the petitioner has failed to make a
substantial showing of the denial of a constitutional right.
The Clerk of the Court is directed to enter judgment dismissing
the petition and closing this case.

**SO ORDERED**

Dated:   New York, New York
         November 3, 2006

John G. Koeltl
United States District Judge

33